IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANTONIO GIACCONE and RITA
GIACCONE,

              Plaintiffs,

      v.

CANOPIUS US INSURANCE COMPANY,

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-6939 (JBS/KMW)

**OPINION**

APPEARANCES:

Johnathan Wheeler, Esq.
LAW OFFICES OF JONATHAN WHEELER, P.C.
1617 JFK Boulevard, Suite 1270
Philadelphia, P.A. 19103
    Attorney for Plaintiffs

Jared T. Greisman, Esq.
WHITE, FLEISCHNER & FINO, LLP
2137 Route 35
Holmdel, N.J. 07733
    Attorney for Defendant

**SIMANDLE, Chief Judge:**

## I.  INTRODUCTION

This insurance coverage litigation concerns Defendant Canopius US Insurance Company's (hereinafter, "Defendant") refusal to pay insurance benefits to Plaintiffs Antonio Giaccone and Rita Giaccone (hereinafter, "Plaintiffs") for their claim that a January 31, 2013 storm severely damaged their commercial and rental property in Pleasantville, New Jersey. (See generally Compl. at ¶ 3.)

Defendant now moves at the outset of this action for summary judgment or for the dismissal of Plaintiffs' Complaint on the ground that they contractually released Defendant from "any and all further obligation" under the insurance policy, No. OUS16008338 (hereinafter, the "Policy"). (See generally Def.'s Br. at 1.) Defendant specifically asserts that the parties entered into a Release and Settlement Agreement (hereinafter, the "Settlement Agreement" or "Agreement") on November 27, 2013, concerning Plaintiffs' claim for property damage that occurred during Hurricane Sandy on October 29, 2012. (See Ex. C to Greisman Aff.) The provisions of the executed Agreement, however, release Defendant from "any and all claims" arising out of damages "that occurred on or about October 29, 2012 (the 'Subject Loss')," and from "any and all" other claims that Plaintiffs could have asserted against the Policy, including unknown claims and those not expressly mentioned in the Settlement Agreement. (Id. at 1-3.) Indeed, the Agreement contains a specific covenant that Plaintiffs had, at the time of the Agreement's execution, "no remaining claims of any kind" under the Policy. (Id. at 3.)

As a result, Defendant asserts that Plaintiffs' supplemental claim for property damage that occurred on January 31, 2013, approximately ten months prior to execution of the Settlement Agreement, constitutes an impermissible attempt to

2

recover "in contravention of the clear and unambiguous terms" of the Agreement.  (Reisman Aff. at ¶ 13.)  Defendant therefore requests that the Court enforce the Agreement "and dismiss Plaintiffs' Complaint, in its entirety, with prejudice," or, in the alternative, enter summary judgment in its favor. (Def.'s Br. at 1, 7-10.)  In addition, and based upon the terms of the Settlement Agreement, Defendant seeks to recover the attorney's fees and costs incurred as a result of this litigation.  (See id. at 9-10.)

Plaintiffs do not dispute the existence, or their execution, of the Settlement Agreement.  Rather, Plaintiffs challenge the scope and interpretation of the Agreement on its face, and argue that certain language makes clear that the Agreement concerned only "losses from Super Storm Sandy on October 29, 2012, and not later losses to the property." (Pls.' Opp'n at 2, 6-8.)  Plaintiffs therefore submit that the Settlement Agreement has no effect on their ability to pursue a claim for property damage that occurred on January 31, 2013. Moreover, even if the Agreement's terms sweep broadly to release any and all claims, Plaintiffs argue that factual disputes concerning the Agreements' validity preclude the entry of summary judgment.  (See Pls.' Opp'n at 8-9.)

The principal issues before the Court concern the scope of the claims released in the Settlement Agreement, namely, whether

3

the Agreement narrowly applies only to causes of damage stemming from Hurricane Sandy on October 29, 2012, or broadly precludes claims for any and all potential losses covered by the Policy; and whether issues of fact preclude the Agreement's enforcement.

For the reasons set forth below, the Court will treat Defendant's motion as one for summary judgment, and will grant the motion.

## II.  BACKGROUND

### A.   Factual and Procedural Background[1]

Plaintiffs own a commercial and rental property in Pleasantville, New Jersey.  (See generally Compl.)  On May 31, 2012, Defendant issued Plaintiffs a "Commercial Lines" insurance policy for the period of May 2, 2012 to May 3, 2013.  (Ex. A to Compl.)

On October 29, 2012, however, Hurricane Sandy "ripped the roof completely off of the building," allowing water to flood the property.  (Giaccone Dep. at 8:1-9; see also Pls.' SMF at ¶ 2.)  As a result, Plaintiffs, through their licensed Public Adjuster, Michael DeRita, submitted an insurance claim to Defendant for the losses associated with Hurricane Sandy. (DeRita Cert. at ¶¶ 1-2.)  In investigating the claim, Defendant's claims agent represented that 80% of the damages to

---

[1] The Court derives these undisputed facts from the parties' various affidavits and exhibits.

4

Plaintiffs' property resulted from a subsequent storm, rather than Hurricane Sandy. (See DeRita Cert. at ¶ 2; Ex. A to DeRita Cert.)  Defendant's agent, in making the final offer, indicated that the offer was more than it would have been for just Sandy-related damage alone.  (See Ex. A to DeRita Cert.)

Nevertheless, Defendant offered to settle Plaintiffs' claim in its entirety and, on October 31, 2013, forwarded a four page proposed settlement and release through Raphael & Associates, Defendant's claims administrators, in order to resolve the claim.  (Ex. B to DeRita Aff.)  The Agreement, which Plaintiffs executed on November 27, 2013, provided that Plaintiff would receive a total payment of $458,446.11 in full satisfaction of their outstanding insurance claim. (See generally Ex. C to Greisman Aff.)  In exchange for this payment, Plaintiffs agreed to release any and all claims related to the property damage and loss that occurred on October 29, 2012, and further agreed to release all other claims that Plaintiffs "could have [] made" under the Policy and/or against Defendant.  (Id. at 2-3.)

The Settlement Agreement provided, in particular, three specific provisions relevant to the pending motion.  First, Plaintiffs agreed

> to remise, release, acquit, and forever discharge
> [Defendant] . . . of and from any and all claims,
> actions, causes of action, demands, rights, damages,
> costs, losses of services, expenses, interest,
> compensation, and obligations towards [Defendant],

5

whatsoever (whether contractual, quasi-contractual, extra-contractual or otherwise), which [Plaintiffs] [then had] or which [t]hereafter accrue[d] on account of, or in any way growing out of damages (whether direct, consequential or punitive), interest, costs and fees resulting or to result from or in any way relating to the claim and/or loss and/or damage sustained to the property located at 118-124 South Main Street Pleasantville New Jersey 08232 as a result of wind and water damages that occurred on or about October 29, 2012 (the "Subject Loss"). . . .

(Id. (emphasis added).)   Second, Plaintiffs agreed to

[r]elease[] and give[] up any and all claims and rights which [Plaintiffs] may have [had] against [Defendant] . . . including those of which [Plaintiffs were] not aware and those not mentioned in [the Settlement Agreement], . . . [and] specifically release[d] the following claims: Any and all claims that were made or could have been made under or against [the Policy] issued by [Defendant], bearing Policy Number OUS016008388. It is specifically agreed that there are no remaining claims of any kind which GIACCONE has under Policy Number OUS016008388.

(Id. at 2-3 (emphases added).)   Finally, the Settlement

Agreement provided for an award of "attorney's fees, interest,

costs and expenses of litigation" to the "prevailing party in

any action to enforce" the Settlement Agreement.   (Id. at 4.)

In executing the Settlement Agreement, Plaintiffs

acknowledged, before a Notary Public, that they read and

reviewed the Agreement in its entirety and fully understood its

provision.   (Id. at 4.)   Nevertheless, on January 16, 2014, ten

months after executing the Settlement Agreement, Plaintiffs

submitted a second claim under the Policy for damages allegedly

sustained to their property during a subsequent storm on January

6

31, 2013.  (Greisman Aff. at ¶ 11; see also Compl. at ¶ 3.)  On June 10, 2014, however, Defendant denied coverage for this "supplemental claim" on the ground that the Settlement Agreement, on its face, released Defendant from any and all obligations under the 2012–2013 policy.[2] (Ex. E to Greisman Aff.)

Following Defendant's declination of coverage, Plaintiffs filed the initial state court Complaint on September 22, 2014, alleging that Defendant breached its contractual obligations and duty of good faith and fair dealing by refusing to provide coverage for the January 31, 2013 loss.  (See Ex. A to Reisman Aff.)  Defendant removed the action to this Court on November 6, 2014 [see Docket Item 1], and the pending motion followed.  [See Docket Item 3.]

## III. PRELIMINARY ISSUE

The Court must, at the outset, determine how to treat Defendant's motion.

Plaintiffs argue that the Settlement Agreement cannot form the basis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' Complaint does not

---

[2] Moreover, because Plaintiffs filed their supplemental claim "one year after the reported date of the supplemental loss," Defendant secondarily asserted that their "failure to provide timely notice of the claim" precluded them from obtaining coverage.  (Id. at 2-3.)

explicitly or implicitly rely upon the Agreement.  (See, e.g.,
Pls.' Opp'n at 5-6.)

It is axiomatic that the Court may not, in resolving a
motion to dismiss under Rule 12(b), consider "matters extraneous
to the pleadings."  In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1426 (3d Cir. 1997).  Rather, the Court may only
consider a "'document integral to or explicitly relied upon in
the complaint,'" or an "'undisputedly authentic document'" if
such document forms the predicate for the complaint.  In re
Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287
(3d Cir. 1999) (citations omitted).

Here, Defendant's motion turns, in its entirety, upon the
terms and interpretation of the Settlement Agreement, a document
neither referenced nor inherently critical to Plaintiffs'
Complaint.  When "matters outside the pleadings are presented to
and not excluded by the court, the motion must be treated as one
for summary judgment under Rule 56," and the Court must
ordinarily provide all parties with adequate notice and an
opportunity to supplement the record.  FED. R. CIV. P. 12(d).
Where, however, the movant frames the motion to dismiss in the
alternative as one for summary judgment, as here, the Court may
convert the motion without notice, because the motion itself
puts the non-moving party on sufficient notice that the Court
might treat the motion as one for summary judgment.  See, e.g.,

8

S. Jersey Gas Co. v. Mueller Co., Ltd., No. 09-4194, 2010 WL 1742542, *4 (D.N.J. Apr. 27, 2010) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); Carver v. Plyer, 115 F. App'x 532, 536 (3d Cir. 2004)).  Indeed, Plaintiffs specifically addressed the summary judgment standard in their opposition to the pending motion, and appended a statement of material facts, thereby confirming their knowledge that the Court may treat Defendant's motion as one for summary judgment.  (See, e.g., Pls.' Opp'n at 3-4, 6-9; see Pls.' SMF.)

For these reasons, the Court will treat Defendant's motion as one for summary judgment under Federal Rule of Civil Procedure 56, and turns to the relevant standard.[3]

IV.  **STANDARD OF REVIEW APPLICABLE TO DEFENDANT'S MOTION**

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

---

[3] Plaintiffs argue that Federal Rule of Civil Procedure 12(b) precludes Defendant from raising the affirmative defense of release by motion, rather than by a responsive pleading.  (See Pls.' Opp'n 4-6.)  Nevertheless, because the Court will treat Defendant's motion as one for summary judgment, the Court need not reach the issue, because Plaintiffs have not challenged Defendant's ability to raise the issue of release under Federal Rule of Civil Procedure 56.

9

**V.   DISCUSSION**

The parties take, as stated above, diametrically opposed positions on the scope and interpretation of the Settlement Agreement.  (Compare Def.'s Br. at 8 (arguing that the Settlement Agreement covers all potential claims during the policy period), with Pls.' Opp'n 6-8 (arguing that the Settlement Agreement solely covers damage that occurred on or about October 29, 2012).)

For the reasons that follow, however, the Court finds the limited terms of the Settlement Agreement to be remarkably clear on their face.  Nevertheless, because the pending motion turns in part on the issue of contract interpretation, the Court will first introduce the relevant interpretative principles, prior to addressing the substantive provisions of the Settlement Agreement and their effect on the claims asserted by Plaintiffs.

**A. Relevant Principles of Contract Interpretation**

A settlement agreement constitutes a simple legal contract subject to enforcement through the application of basic principles of state contract law.  See, e.g., Weisman v. N.J. Dep't of Human Servs., 982 F. Supp. 2d 386, 391-92 (D.N.J. 2013) (citation omitted), aff'd, 593 F. App'x 147 (3d Cir. 2014); see also In re Cendant Corp. Sec. Lit., 569 F. Supp. 2d 440, 443 (D.N.J. 2008) (citing Impink ex rel. Baldi v. Reynes, 935 A.2d 808, 812 (N.J. Super. Ct. App. Div. 2007) (noting that "[a]

settlement between parties to a lawsuit is a contract like any other contract, which may be freely entered into and which a court . . . should honor and enforce as it does other contracts").

In construing contracts, the Supreme Court of New Jersey has repeatedly instructed that "clear and unambiguous" contracts leave "'no room for interpretation or construction'" and must be enforced "'as written.'" Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013) (citations omitted) (discussing New Jersey contract law).  In other words, clear contractual provisions "must be given effect without reference to matters outside the contract." Bohler-Uddeholm, Inc. v. Ellwood Grp., 247 F.3d 79, 93 (3d Cir. 2001) (internal quotations and citations omitted).

Moreover, it is well settled that "'a party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assert to its terms and legal effect.'" Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 685 (N.J. 1992) (citation omitted).  Indeed, "signing a contract creates a 'conclusive presumption that the signer read, understood, and assented to its terms.'" Raiczyk v. Ocean Cnty. Veterinary Hosp., 377 F.3d 266, 270 (3d Cir. 2004) (quoting Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 842-43

11

(D.N.J. 1995)).  Failing to read a contract therefore provides
no defense to an agreement's binding terms, see Baig v. Nuclear
Regulatory Comm'n, No. 10-0842, 2013 WL 1558707, at *3 (D.N.J.
Apr. 10, 2013) (citing Modern Security v. Lockett, 143 A. 511
(N.J. 1928); Riverside Chiropractic Grp. v. Mercury Ins. Co.,
961 A.2d 21 (N.J. Super. Ct. App. Div. 2008)), and a contract
may not be rescinded where a unilateral mistake occurred "as a
result of the mistaken party's own negligence."  Weisman, 982 F.
Supp. 2d at 395 (citation omitted).

    Nevertheless, a narrow exception arises in the face of
evidence that the contract resulted from fraud, duress, and/or
misrepresentation.  See S.A. Citrique Belge N.V. v. Northeast
Chems., Inc., No. 12-5408, 2013 WL 3223389, at *2 (D.N.J. June
25, 2013) (citing Van Houten Serv., Inc. v. Shell Oil Co., 417
F. Supp. 523, 527 (D.N.J. 1975)).  Indeed, under such
circumstances, even the clearest of contracts may prove voidable
and rescindable.  See Windsor Card Shops, Inc. v. Hallmark
Cards, Inc., 957 F. Supp. 562, 568 n.8 (D.N.J. 1997) (citation
omitted) (noting that a misrepresentation may render a contract
voidable); see also First Am. Title Ins. Co. v. Lawson, 827 A.2d
230, 237 (2003) (citation omitted) (noting that "equitable fraud
provides a basis for a party to rescind a contract").  In the
absence of some mistake, fraud, duress, or other "imposition,"

however, parties will be bound by the clear and unambiguous terms of their agreements.  Weisman, 982 F. Supp. 2d at 395.

### B. The Settlement Agreement Broadly Waives Any and All Claims under the Policy, including the Claims asserted by Plaintiffs in this Litigation

Here, Plaintiffs do not point to any ambiguity in the Agreement, nor do they suggest that the Agreement otherwise lacks sufficient clarity as to its effect.  (See generally Pls.' Opp'n at 6-8.)  Rather, based upon a single provision of the Settlement Agreement, Plaintiffs insist that it "*solely*" concerns "damage stemming from" Hurricane Sandy. (Pls.' Opp'n at 7 (emphasis in original).)  Nevertheless, in looking at the terms of the Agreement on the whole, the Court finds no support for the limited scope asserted by Plaintiffs.

The Settlement Agreement defines, at the outset, the damage caused on October 29, 2012 as the "Subject Loss," and specifically provides that Plaintiffs forever release Defendant from "any and all claims" associated with this Loss.  (Ex. C to Reisman Aff.)  Nevertheless, the Agreement goes on to provide that Plaintiffs also agreed to release Defendant from "any and all claims and rights which [they] may have against [Defendant]," including those of which Plaintiffs were "not aware and those not mentioned in" the Settlement Agreement. (Id. at 2.)  The Settlement Agreement then reinforces the broad scope of this release by reiterating that Plaintiffs

13

"specifically release[] the following claims: Any and all claims that were made or could have been made under or against [the] insurance policy issued by" Defendant.  (Id.)  Indeed, Plaintiffs "specifically agreed" that, as of the date of execution, they had "no remaining claims of any kind" under the Policy.  (Id.)

    In arguing that the Settlement Agreement possesses a limited scope, Plaintiffs assert that the Agreement's identification of the October 29, 2012 Hurricane Sandy damage as the "'Subject Loss'" necessarily dictates that the Settlement Agreement covers only Plaintiffs' claims related to this Loss.  (Pls.' Opp'n at 7.)  When viewed in its entirety, however, the Settlement Agreement imposes no such limitation, nor does the language of the release limit its coverage to only the Subject Loss.  See Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc., 818 A.2d 431, 497 (N.J. Super. Ct. App. Div. 2003) (citations omitted) (noting that a contract "must be read as a whole," and that "[l]iteralism must give way to context").  In fact, the Settlement Agreement could not be clearer in its broad expression of the scope of the released claims, and Plaintiffs' narrow interpretation would impermissibly render multiple provisions of the Agreement meaningless.  See Porreca v. City of Millville, 16 A.3d 1057, 1070 (N.J. Super. Ct. App. Div. 2011)

14

(citations omitted) ("A contract 'should not be interpreted to render one of its terms meaningless.'").

Critically, despite the definition of "Subject Loss," the Settlement Agreement expressly provides, as stated above, that the Agreement releases "any and all claims," including those not known to Plaintiffs, those "not mentioned" in the Agreement, and/or any claims that "could have been made under or against" the Policy.  (Ex. C to Reisman Aff.)  In parsing this language, it is a bedrock principle of contract interpretation that the "phrase 'any and all' allows for no exception," particularly where, as here, the language following the phrase specifically mentions "any and all claims" of any kind, whether known and/or unknown, against the Policy and Defendant.  Isetts v. Borough of Roseland, 835 A.2d 330, 335–36 (N.J. Super. Ct. App. Div. 2003) (citing Atl. Cas. Ins. Co. v. Interstate Ins. Co., 100 A.2d 192, 198 (N.J. Super. Ct. App. Div.1953) ("[t]he word 'any' clearly may and should be interpreted as meaning 'all or every'")).

These all-inclusive provisions therefore provide a clear and express indication that the Agreement required, by its very terms, the release of all potential claims against Defendant, regardless of whether they arose from Hurricane Sandy or any subsequent storm.  In other words, these provisions make plain that the Settlement Agreement subsumed and covered all of the damages to Plaintiffs' property up to the November 27, 2013

15

Settlement date.  See Recchia v. Kellogg Co., 951 F. Supp. 2d 676, 687-88 (D.N.J. 2013) (finding a release of "'any and all other claims'" left "no doubt as to the nature" of the waived claims)

For these reasons, the Court rejects Plaintiffs' position that the Agreement and its release "solely" concerned the damage stemming from Hurricane Sandy on October 29, 2012. (Pls.' Opp'n at 7 (emphasis in original).)  Therefore, the Court turns to Plaintiffs' alternative challenge to the Agreement's enforcement.

### C. No Genuine Issues of Material Fact Preclude the Entry of Summary Judgment in Defendant's Favor

In challenging the Agreement's effect on the claims in this litigation, Plaintiffs alternatively argue that issues of fact concerning whether a meeting of the minds produced the Agreement preclude summary judgment. (See Pls.' Opp'n at 8.)  Defendant, however, argues that "the alleged circumstances leading up to the Settlement" may not be "relied upon to alter the [otherwise] clear and unambiguous terms of the writing."[4]  (Greisman Supplemental Aff. at ¶ 8.)

---

[4] Though Defendant may be correct that the parol-evidence rule prohibits the introduction of extrinsic evidence to vary the terms of an integrated contract, see, e.g., Conway v. 287 Corporate Ctr. Assocs., 901 A.2d 341, 347 (N.J. 2006), the parol-evidence rule does not preclude the introduction of extrinsic evidence in an attempt to avoid the contract through a demonstration of fraud in the inducement, misrepresentation, or

A "legally enforceable agreement" must be the product of mutual assent, and requires "'a meeting of the minds.'"  Atalese v. U.S. Legal Servs. Grp., L.P., 99 A.3d 306, 312-13 (N.J. 2013) (citations omitted).  Mutual assent, in turn, "requires that the parties have [a full] understanding of the terms to which they have agreed," and an effective waiver in any contract requires that "'a party have full knowledge of his legal rights and [an] intent to surrender those rights.'"  Id. at 313; see also Weisman, 982 F. Supp. 2d at 394 (quoting Hoffman v. Supplements Togo Mgmt., LLC, 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011) (citing W. Caldwell v. Caldwell, 138 A.2d 402, 410-11 (N.J. 1958))).

Here, based upon the circumstances leading up to their receipt and execution of the Settlement Agreement, Plaintiffs assert that they understood the Agreement to concern only damages arising from Hurricane Sandy on October 29, 2012.  (See Pls.' Opp'n at 8.)  Indeed, Mr. Giaccone specifically testified during his deposition that he believed the Settlement Agreement only covered "certain damages that occurred during the Sandy storm," and not any damage caused by storms following Hurricane Sandy.[5]  (Giaccone Dep. at 14:7-17:15.)  Mr. DeRita, Plaintiffs'

---

some other imposition.  See Walid v. Yolanda for Irene Couture, Inc., 40 A.3d 85, 93-94 (N.J. Super. Ct. App. Div. 2012).
[5] Moreover, because Defendant had purportedly retracted an initial offer, Mr. Giaccone testified to his "impression" that

Public Adjuster, similarly certified that he received the Settlement Agreement from Defendant on October 31, 2013, and forwarded the Agreement to Plaintiffs "with the understanding that [it] released **only** claims arising from damages sustained as a result of the storm on October 29, 2012 (referred to as the "subject loss") in the Release." (DeRita Aff. at ¶¶ 4-5 (emphasis in original).) Mr. DeRita further attached correspondence he received from Defendant's claims administrator, which consistently identified the Settlement Agreement as relating to "Superstorm Sandy" on "October 29, 2012." (Ex. B to DeRita Aff.)

Despite these assertions, Plaintiffs nevertheless executed an Agreement that included a release with a much greater breadth. Plaintiffs' challenge to the Agreement's enforcement therefore amounts, in essence, to a request that they be excused from the preclusive effect of the Settlement Agreement as a

---

if they did not accept the settlement, they "would ultimately be given less if anything." (Id. at 19:2-5.) In other words, he purported to believe that the settlement offer would be further reduced if Plaintiffs "were to question anything else." (Id.) Nevertheless, Plaintiffs have provided no evidence of coercion, imposition, or any other misconduct by Defendants. Plaintiffs were represented by counsel and by an experienced claims adjuster when they agreed to settle all claims, known and unknown. (See Giaccone Dep. at 15:9-23 (noting that Plaintiffs were represented by counsel at the time Plaintiffs received the final offer and executed the Settlement Agreement).)

result of their own failure to review its limited and clear provisions.

As indicated earlier, however, New Jersey law conclusively presumes that Plaintiffs, in executing the Settlement Agreement, read, understood, and assented to its terms.  See Raiczyk, 377 F.3d at 270.  And, Plaintiffs' failure to actually have done so, despite their acknowledgment on the Agreement, provides them with no basis for relief.[6]  See, e.g., Riverside Chiropractic Grp. V. Mercury Ins. Co., 961 A.2d 21, 27 (N.J. Super. Ct. App. Div. 2008) (quoting Henningsen v. Bloomfield Motors, Inc., 161 A.2d 69, 84 (N.J. 1960) ("As a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'"); Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 175 (D.N.J. 2008) (noting that failure to read an agreement "does not relieve" a party of the "liability assumed thereunder").

Moreover, although evidence of fraud, duress, or other imposition may, under certain circumstances, provide a basis for

---

[6] It is also significant that Defendant's claims agent advised Plaintiffs, prior to execution of the Settlement Agreement, that 80% of the damages to Plaintiffs' property resulted from a subsequent storm, rather than Hurricane Sandy. (See DeRita Cert. at ¶ 2; Ex. A to DeRita Cert.)  On that basis alone, Plaintiffs should have known that the Agreement may have encompassed more than Hurricane Sandy.  That fact would have been further reinforced and indeed confirmed in the event Plaintiffs actually reviewed the Agreement's plain terms.

rescission, Plaintiffs have pointed to no such evidence.
Rather, Plaintiffs rely upon evidence that suggests only their
own misunderstanding and/or unilateral mistake concerning the
clear writing they signed, but none that casts any doubt upon
the propriety of Defendant's conduct or gives rise to any
reasonable inference of Defendant's fraud, coercion, or other
trickery.[7]

Plaintiffs' subjective failings standing alone, however,
prove insufficient to rescind the Agreement, and fail to create
a genuine issue of material fact sufficient to defeat summary
judgment.  See Weisman, 982 F. Supp. 2d at 396 (finding no
evidence of fraud, duress, or other imposition in the undisputed
facts produced in discovery, and granting summary judgment based
upon the terms of a settlement agreement); see also Shernoff v.
Hewlett-Packard Co., No. 04-4390, 2006 WL 3497798, at *4 (D.N.J.
Dec. 4, 2006) (finding no credible evidence of misrepresentation
or fraud that might arguably warrant rescinding the settlement
agreement), aff'd, 302 F. App'x 83 (3d Cir. 2008).  Defendant's
motion for summary judgment will therefore be granted.[8]

_____

[7] Nor is this a case in which Plaintiffs obtained a settlement in
a mere token amount.  Indeed, Defendant provided Plaintiffs, as
stated above, a total payment of $458,446.11 in full
satisfaction of their outstanding insurance claim. (See
generally Ex. C to Greisman Aff.)
[8] The Agreement provides, as stated above, that the "prevailing
party in any action to enforce this Release and Settlement
Agreement shall be entitled (both at trial and upon appeal) to

**VI.   CONCLUSION**

     For all of these reasons, Defendant's motion for summary judgment will be granted.   An accompanying Order will be entered.

| | |
|---|---|
| **June 29, 2015** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

attorney's fees, interest, costs, and expense of litigation."
Here, Defendant requests an award of "the fees and costs" it
incurred "in making the instant motion." (Def.'s Br. at 10.)
Having prevailed in its motion, the Court will permit Defendant
to file its affidavit of costs and attorney's fees in the format
required by Local Civil Rules 54.1 and 54.2 within fourteen (14)
days.   A judgment for attorney's fees and costs will be entered
if these submissions are timely made and approved by the Court.